**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No. 21-cr-56 (CKK)** |
| | ) | |
| **WILLIAM VOGEL** | ) | |
| | ) | |
| **Defendant.** | ) | |

**WILLIAM VOGEL'S MEMORANDUM IN AID OF SENTENCING**

William Vogel hereby submits the following memorandum in aid of sentencing in this matter. Mr. Vogel respectfully requests that this Honorable Court follow the recommendation of U.S. Probation and sentence him to a period of probation. Given that Mr. Vogel has been under supervision for over two years without a single violation, counsel recommends one year of probation.

## Introduction

Mr. Vogel is a twenty-nine year old man who two year old man who resides in Pawling, NY. He was one of the first charged for the events on January 6, having been arrested merely nineteen days later. He has no criminal record and has been entirely compliant with his pretrial release conditions. He is gainfully employed as a skilled maintenance worker and performs plumbing, hearing and mechanical work. He has been engaged in this work since 2015. He also plays guitar and writes and performs music.

Mr. Vogel's arrest was one of the first after January 6th and it was widely publicized in his hometown and nationally. He was publicly shamed by his

community and called a fascist, a traitor and an insurrectionist, becoming a poster child for what people referred to as a "MAGA terrorist."  Many of his comments were defensive because he wished to respond to the allegations that he was a terrorist or a traitor.  Mr. Vogel loves this country and entered the Capitol to bear witness to what was happening.  His actions reflected his spectator role – he was inside the building for twenty minutes and said only one sentence.

As depicted here, the most notable thing that Mr. Vogel did was to assist in picking up trash – footage of which was caught by the Memorial Hall video.  Def. Exh A.



These actions are consistent with Mr. Vogel's statements and his overall approach to January 6th.  Notwithstanding the government's unproven suggestions that he encouraged others, he mostly kept quiet and kept to himself, save some brief conversations with Capitol staff and police.  He was curious and wanted to observe and document what was happening.  He also wanted to discourage violence and did so, and certainly never "aligned himself with the mob."  All of these things, he recognizes, were illegal and that is why he accepted responsibility for his actions.  But he should be sentenced as an individual who was seeking to do no harm.  In Govt's Exhibit 12, p. 17, Mr. Vogel's thought process was evident when he was messaging with his very disapproving brother:

> John Vogel:  what did you accomplish?
>
> Will Vogel:  tried to persuade some of the rioters
>
> To not do things that would get them killed.
>
> Tried to persuade them not to trash the place
>
> Or steal
>
> Or break

Gov't's Exhibit 12 at 17.

The government also faults Mr. Vogel for his communications after January 6th stating that his words "reflect a stark failure to accept his role in the dangerous events of the day."  ECF 59 at 2.  But the government misunderstands Mr. Vogel's comments about the shooting of Ashli Babbit – instead he was defending the actions

of the officer to his brother who said that "it's a [clear] case of police brutality.  Govt'

Exh 12 at 26.  Mr. Vogel responded by criticizing the rioters' actions:

> Will Vogel:   I mean they pop through the chamber.
>
> [What] the fuck were they thinking.
>
> I mean that's like 12 barriers you went through.
>
> Gov'ts Exh 12 at 27.

Mr. Vogel pleaded guilty because he recognizes that he was part of a

shameful day in American history.  He knew that he heard alarms before entering

the building and that the sheer volume of individuals present at the Capitol made

the officers' situation impossible.  He unequivocally accepts responsibility for his

crime for being somewhere he was not allowed to be.  It is noteworthy that he

accepted responsibility for Parading but, as one of the initial group of January 6th

defendants, has been publicly shamed for treason and sedition.

In reality, Mr. Vogel was among the least culpable people on January 6th,

compared to the others and should be sentenced accordingly.  Mr. Vogel spent less

than twenty minutes inside the building, a portion of which was cleaning trash left

by rioters.  He left when an officer asked him to (Exhibit A).  He never went into

any sensitive areas and shouted only twice when inside the building, once to say

"Amen!" and a second time to say "Let this be a message to the Chinese

communists!"  In his own videos, he speaks very little more in line with

documenting the events than participating in them.  All of Mr. Vogel's actions

demonstrate he intended to be a peaceful protestor and not a violent insurrectionist.

Unlike those prepared, Mr. Vogel did not bring weapons, bear spray or defensive armor.  He was not there for a fight.

The government raises factors that are apparent in nearly all Capitol cases even though Mr. Vogel's actions do not justify a sentence of incarceration.  Mr. Vogel's actions fall squarely in the least culpable end of the spectrum. The government points to factors that involve things shared by almost **all** of the January 6th Parading cases.  ECF 59 at 2.  Everyone saw signs and barricades indicating that entry into the Capitol would be unlawful; all defendants heard chants of "take it back," flashbangs and alarms.  Almost of all of the defendants heard calls for violence or destruction of property and Mr. Vogel did not *see* anyone actually being violent.  And almost all defendants recorded at least some parts of their entry into the Capitol and unlike Mr. Vogel, many made very public statements on social or other kind of media.

Even the government's claim that Mr. Vogel ignored commands to leave the Crypt area are overblown.  No officer apparently recalls instructing Mr. Vogel specifically to leave the Crypt and Govt's Exh. 7 shows that no officer directly interacted with Mr. Vogel.  Exh. 7 also shows other individuals standing unbothered in the Crypt even near several police officers.  Two minutes later, Mr. Vogel leaves and after an officer approaches and appears to point to an exit. (22:39:05).

Mr. Vogel recognizes the mistake that he made by entering Capitol grounds on January 6th. He understands that the law enforcement officials whom he deeply respects were unable to distinguish between those like him, who intended no harm and other violent insurrectionists. Mr. Vogel's conduct demonstrates that he was one of the individuals who was there for curiosity. He walked in, looked around, picked up some trash, took some video and left. He never entered any offices or other private areas. He did not carry weapons. And he was not in the presence of any physical violence between rioters and police.

## ARGUMENT

### I.  Legal Standard

The Court is well aware that the Supreme Court's opinions in *Kimbrough v. United States*, 552 U.S. 84 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), have dramatically altered the law of federal sentencing. Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and

providing the defendant with needed educational and vocational training, medical care, or other correctional treatment.  *See* 18 U.S.C. §3553(a).

## II.   **Imposing a Sentence of Probation is Sufficient, But Not Greater Than Necessary, to Comply with 18.U.S.C. §3553(a).**

The Defense concurs with U.S. Probation Office's recommendation of a period of probation but contends that a period of one year is appropriate.

It is certainly true that January 6th left a stain on the Republic.  But Mr. Vogel, in the end, is a long and gainfully employed man with no criminal record who committed and took responsibility for a petty misdemeanor. Although many other Capitol rioters have falsely claimed that their actions were harmless, Mr. Vogel even helped pick up the trash and spoke to deescalate rioters seeking to be violent or destroy property.  Still, Mr. Vogel decided to accept responsibility and saved the government from the resources it would have had to commit towards trial.

This acceptance of responsibility is important because, unlike most other federal offenses, that acceptance is not built into the calculation of his sentence. Mr. Vogel agreed to plead guilty because he is remorseful that he is associated with individuals who do not represent his beliefs or actions.  Indeed, Mr. Vogel was driven in part by a desire to help control the rioters and wished for the protest to have been peaceful.  He failed to do so and he regrets that failure every day. He pleaded guilty because he recognizes the trauma that police officers experienced that day and because he knows that he contributed, even though he had no intention of harming any officers or disrupting the certification process.  Because of

his genuine remorse and his acceptance of responsibility, also demonstrated by his

pretrial compliance, he should be ordered to serve a one year period of probation.

 In fact, in applying the rubric cited by the U.S. Attorney's Office, it is clear

that Mr. Vogel is at the low end of the spectrum for any of the prosecuted offenses.

In each of its Sentencing Memoranda, the government has forcefully argued:

> Additionally, while looking at the defendant's individual conduct, we
> must assess such conduct on a spectrum. This Court, in determining a
> fair and just sentence on this spectrum, should look to a number of
> critical factors, to include: (1) whether, when, how the defendant
> entered the Capitol building; (2) whether the defendant encouraged
> violence; (3) whether the defendant encouraged property destruction;
> (4) the defendant's reaction to acts of violence or destruction; (5)
> whether during or after the riot, the defendant destroyed evidence; (6)
> the length of the defendant's time inside of the building, and exactly
> where the defendant traveled; (7) the defendant's statements in person
> or on social media; (8) whether the defendant cooperated with, or
> ignored commands from law enforcement officials; and (9) whether the
> defendant demonstrated sincere remorse or contrition. While these
> factors are not exhaustive nor dispositive, they help to place each
> defendant on a spectrum as to their fair and just punishment.

 Applying these factors demonstrates that Mr. Vogel should receive a

probationary sentence.  First, he entered the Capitol building through an open door

at a time and place where there was no violence.  Second, Mr. Vogel encouraged no

one to be violent and was not in the presence of any violence.  Third, Mr. Vogel did

not encourage any property destruction.  He was not in the presence of any property

destruction.  Mr. Vogel did not destroy any evidence – he provided his phone to law

enforcement.  He spent less than twenty minutes inside the building and did not

enter any sensitive areas.  His social media activity on and after January 6th was

limited to communications with his own friends.  Mr. Vogel cooperated with law

enforcement entirely both on and after January 6th.  He is genuinely and sincerely remorseful for his actions.

### a.  Mr. Vogel's Personal History and Characteristics

William Vogel is a hard-working young man who works in mechanical construction and plumbing.  He works most waking hours of the day and when he has free time, he plays music.  He has never been in any trouble.

For Mr. Vogel, his work is more than a job. It is his way of contributing to the community.  He has developed a valuable skillset and uses his talents to provide assistance for the many less fortunate who cannot afford a plumber or to fix a water heater.  He has recognized that his skills are valuable and that he can make a difference in the lives of individuals.  He does this work despite often working 80 hour weeks.

Mr. Vogel has repeatedly acknowledged his wrongheaded actions on January 6th and assures the Court that his behavior around the time is uncharacteristic of his nature.  At the outset of the pandemic, Mr. Vogel became interested in politics through then-President Donald Trump.  Once the pandemic began, Mr. Vogel spent outsized time on the internet and became exposed to conspiracy theories.  He maintains his rights to free speech and free though but knows that the actions of him and others, on January 6th, went too far.

Mr. Vogel has no criminal history and has never been associated with these sorts of activities.

### b.  Nature and Circumstances of the Offense

Although Mr. Vogel has taken responsibility for illegally entering the Capitol building, there are a number of reasons why this factor weighs in favor of a sentence short of incarceration.  Mr. Vogel had no plans to go to the Capitol until he was prompted to by the president.  He did not engage in any violence or destruction that day.   He did not bring any weapons or protective armor to the District, much less to the Capitol.  He was respectful to police officers the entire time.  He did not enter any restricted areas. Unlike those rioters prepared for battle, he came to the District without the smallest desire to engage in violence.  And when inside, he acted peacefully and even helpfully.  He spent time both picking up garbage and pleading with rioters not to destroy or steal property, demonstrating that his intent was only to protest.  And he did not encourage anyone to do anything. Even among those who were guilty of the parading offense, his less than twenty minutes lies in the far end of the spectrum in terms of culpability.

### c.   The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate Deterrence, and the Need to Avoid Unwanted Sentencing Disparities

Based on Mr. Vogel's personal history and characteristics, it is clear that his entry on January 6, 2021 was an isolated event that was completely out character. It is also extremely unlikely that he will recidivate given his lack of criminal history and his perfect record on pre-trial supervision for the past two and a half years. Any potential for recidivism can be addressed by the probationary sentence recommended by the defense and U.S. Probation.

When weighed against other cases, Mr. Vogel's conduct is more suitable for a sentence that spares him of incarceration.   The probation office's recommendation recognizes this and concludes that Mr. Vogel's conduct was, relative to others, minor.

The government goes to great lengths to urge the Court to *not* to consider other January 6th sentences in attempting to diminish the import of Section 3553's prohibition against unwarranted sentencing disparities.  The facts of the January 6th cases are not all the same – but they do share a variety of similarities.  Till recently, the government had repeatedly relied upon the "critical factors" cited above to distinguish between the severity of different cases.  The Court should not stray from this rubric now, simply because it does not support the government's particular allocution.

The government does not wish the Court to consider unwarranted sentencing disparities for petty misdemeanors because, factually, the majority of individuals who have pleaded guilty to the Parading offense like Mr. Vogel has been spared incarceration.  There have been some outlier sentences for individuals who appeared to seek out offices belonging to those in Congressional leadership but, in an effort to avoid disparate sentences, judges in this District have followed the cases presented by the petty misdemeanor charge.

It is important to note that individuals allowed to plead guilty to parading include those whose conduct was significantly worse than Mr. Vogel. For example, Derek Jancart, 21-cr-148 (JEB) (45 days incarceration) and Eric Rau, 21-cr-467

(JEB) (45 days incarceration) wore gas masks, had two-way radios, Kevlar-lined gloves and were posting about the lack of snipers near the Capitol. *United States v. Derek Jancart*, 21-cr-148, ECF 25 at 13. Nichols Perretta (30 days of incarceration) entered after being tear gassed, stole Congressional documents and discarded them to destroy evidence. *United States v. Nichols Perretta*, 21-cr-539 (TSC), ECF 47 at 19.  Nolan Kidd (45 days incarceration) entered the building after being tear-gassed three times and shouted encouragements to rioters assaulting police. *United States v. Nolan Kidd*, 21-cr-249 (CRC), ECF 56 at 23.  John Lolos (14 days) was in the Capitol for 43 minutes "chanting at U.S. Capitol police" and was removed from a commercial flight on his way home for disrupting the flight with chants about Trump. *United States v. John Lolos*, 21-cr-243 (APM), ECF 32 at 2-3. Zachary Wilson, who received a probationary sentence with 45 days home detention, entered into Speaker Pelosi's office and twice lied to the FBI. *United States v. Zachary Wilson*, 21-cr-578 (APM), ECF 49 at 19.  Andrew Ericson (20 days incarceration) also went entered the Speaker's suite, stole a beer and drank it with his feet on the conference table. *United States v. Andrew Ericson*, 21-cr-506 (TNM), ECF 37 at 2.

Some defendants charged even under 1752(a), the one year misdemeanor, have received sentences of straight probation.   Rachel Pert was sentenced to probation despite admitting that she was trying to "storm them to stop the vote." *United States v. Rachel Pert¸*21-cr-139 (TNM). Jeffrey Witcher was sentenced to probation despite "penetrat[ing] the Crypt portion of the U.S. Capitol, where violence between rioters and law enforcement was occurring around him" and

deleting evidence from his phone, *United States v. Jeffrey Witcher,* 21-cr-235 (RC), ECF 39 at 2. Kevin Cordon received probation despite entering the Capitol wearing body armor and a gas mask, *United States v. Kevin Cordon*, 21-cr-277 (TNM). Verden Nalley received probation despite spending 30 to 40 minutes in the Capitol and threatening to "be back with guns in two weeks", *United States v. Verden Nalleyi,* 21-cr-116 (DLF) ECF 93 at 2. Jenny Cudd received probation despite wearing bulletproof sweatshirt, pushed against police yelling "go" and "charge," *United States v. Jenny Cudd*, 21-cr-68 (TNM) ECF 90 at 2.

This Court has also followed the trend of the other District judges and has sentenced individuals to incarceration when their actions were significantly worse than those who simply walked through. The Court sentenced Boyd Camper to 60 days incarceration, but Mr. Camper destroyed video and audio evidence of his participation, referred to himself as a person "on the front line" of an "insurrection" in a television interview. He told the FBI that "we were going to take the Capitol steps" and he knew it was not going to be safe. *United States v. Boyd Camper*, 21-cr-325 (CKK).

This Court sentenced Virginia Spencer to 3 months of incarceration because she spent an hour in the Capitol, went to sensitive areas of the building and brought her 14 year old son *into* the building. She also had two prior convictions. *United States v. Virginia Spencer*, 21-cr-147 (CKK).

Oliver Sarko, who was sentenced to 30 days incarceration by this Court (the same term requested by the government here), called "Where are the traitors?"

inside the Capitol and "Bring out Pelosi!"  He entered sensitive areas, including
Senator Jeff Merkley's office and the spouse's office without permission.  He also
had several prior convictions.  *United States v. Oliver Sarko*, 21-cr-591 (CKK).

Janet Buhler was also sentenced to 30 days incarceration.  But she entered
into the most sensitive area – the Senate Gallery.  She remained in the gallery after
entering it just 30 minutes after the U.S. Senate was evacuated.  *United States v.
Janet Buhler*, 21-cr-510 (CKK).

Marilyn and Thomas Fassell were sentenced to 30 and 7 days of incarceration
respectively.  Ms. Fassell had encouraged rioters to push forward by shouting "Why
are we stopping?  Why is anybody stopping?"  Both defendants also went into the
sensitive areas like Speaker Pelosi's suite and Senator Merkley's private hideaway
office.  They were inside the building for 40 minutes and Mr. Fassell was seen
smoking a cigarette inside the building.  *United States v. Fassell,* 21-cr-692 (CKK).

The Court also sentenced Nicholas Hendrix to a period of 30 days
incarceration.  He was a veteran of the Navy and was involved in the area around
the day's worst violence in the porticos by the West Terrace.  There, the defendant
prevented rioters from leaving by blocking their path and violently confronted and
interfered with police.  He was also part of a group chanting "Hang Mike Pence!"
*United States v. Nicholas Hendrix,* 21-cr-426.

The government cites to *United States v. Joshua Wagner,*21-cr-310 (ABJ) to
justify its recommendation.  But the defendant there wondered allowed why the
rioters didn't bring AR-15's to the Capitol and told another rioter to "hold" their

ground because people with weapons would arrive.  He also confronted police officers, calling them "traitors" and accusing them of engaging in "tyranny." Similarly the government's reliance upon *United States v. Philip Weisbecker,* 21-cr-682 (TFH) is misplaced.  The defendant there penetrated the Capitol to Speaker Pelosi's suites.  He also verbally abused law enforcement officers at the Capitol. And while on pretrial release, he had an additional "abusive" verbal confrontation with an unrelated group of officers.

To summarize, a probationary sentence is appropriate for Mr. Vogel because no aggravating circumstances apply here.  Mr. Vogel was not in the District to stop the certification, he did not assault anyone, he did not encourage violence or property destruction, he did not witness any violence or property destruction he was not part of the initial breach, he stayed in the building for minimal time, he engaged with the officers in a friendly manner, he did not destroy evidence and he did not go to a sensitive area when he was inside a building. He tried to pick up after those who threw trash around the Capitol and warned others not to steal or destructive.  He has been entirely compliant on pretrial release. He is sincerely remorseful.

## **CONCLUSION**

For the reasons stated above, Mr. Vogel respectfully requests that the Court impose a period of probation and complete a period of community service.  Mr. Vogel

also requests that a fine not be imposed in light of his obligation to pay $500

restitution.

> Respectfully submitted,
>
> A.J. KRAMER
> FEDERAL PUBLIC DEFENDER
>
> _____/s/_____
> Eugene Ohm
> Assistant Federal Public Defender
> 625 Indiana Ave. NW, Ste. 550
> Washington, D.C. 20004
> (202) 208-7500
> Eugene_ohm@fd.org